1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  DAKARAI ALLEN,                              No. 2:24-cv-01994-DJC-AC

12                    Plaintiff,

13          v.                                  <u>ORDER</u>

14  CITY OF ELK GROVE, et al.,

15                    Defendants.

16

17

18          Pending before the Court is Defendant City of Elk Grove's Motion to Dismiss

19  Plaintiff Dakarai Allen's First Amended Complaint.  Plaintiff alleges that Defendant can

20  be sued under *Monell* pursuant to three theories of liability following an incident

21  where Elk Grove Police Department officers arrested and allegedly used excessive

22  force against Plaintiff.  Defendant argues that Plaintiff's First Amended Complaint fails

23  to identify similar past incidents and has not alleged facts that Police Chief Davis

24  ratified the unconstitutional conduct of the officers.  For the reasons discussed below,

25  the Court GRANTS Defendant's Motion to Dismiss with leave to amend.

26  ////

27  ////

28  ////

**BACKGROUND**

In October 2022, Plaintiff Dakarai Allen was coming home from a social, work event.[1] (FAC (ECF No. 14) ¶ 16.) At the work event, Plaintiff had consumed alcohol, and on his drive determined he was not in a position to be driving. (*Id.* ¶ 2.) Upon this realization, Plaintiff parked his car on the street in front of a neighbor's house and fell asleep. (*Id.*) The neighbors mistook Plaintiff, who was asleep in his car, for a victim of a shooting and called the police to report this information. (*Id.* ¶¶ 2,17.)

Defendant Officers McPherson and Kwan, who were employed by Defendant City of Elk Grove, arrived on the scene and found Plaintiff unconscious. (*Id.* ¶ 18.) However, the officers appeared to realize that Plaintiff was not the victim of a shooting and that there were no indications that a shoot-out had occurred. (*Id.*) However, the officers did not provide this update to Defendant Officers Huppert, Finkes and Sergeant Kelly, who were also employed by Defendant City of Elk Grove, and arrived on the scene shortly after McPherson and Kwan. (*Id.* ¶ 19.)

McPherson and Kwan proceeded to remove Plaintiff from his car, pushed him against the driver's side door, and began to place handcuffs on him. (*Id.* ¶ 22.) Plaintiff asked why he was being arrested and attempted to pull up his pants while the officers slammed him against the car and accused him of resisting arrest. (*Id.*) Kwan and McPherson used their bodyweight to hold Plaintiff's body on the side of the car. (*Id.* ¶ 23.) The officers acknowledged that Plaintiff was too intoxicated to stand on his own. (*Id.*) While trying to stand Plaintiff up, two officers handcuffed Plaintiff's left hand and attempted to pry his right hand behind his back. (*Id.* ¶ 24.) Kwan and McPherson then used a takedown maneuver on Plaintiff, tackling him to the ground and causing

---

[1] Defendant moves to dismiss Chief Davis as a named Defendant given that he is named by Plaintiff only in his official capacity. The Court GRANTS Defendant's request. *See Allen v. Stanislaus County,* No. 1:13-cv-00012-AWI-SAB, 2014 WL 6473686, at *8 (E.D. Cal. Nov. 18, 2014), *report and recommendations adopted in full*, 2015 WL 176457, at *1 (E.D. Cal. Jan. 13, 2015) (citing *Center for Bio-Ethical Reform, Inc. v. Los Angeles, Cnty. Sheriff Dep't,* 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.")).

1    his face to hit the concrete. (*Id*. ¶ 25.) McPherson then tripped over Plaintiff's legs and

2    struck Plaintiff twice on his right leg with a baton. (*Id*.) McPherson's strikes fractured

3    Plaintiff's knee in three places. (*Id*.)

4         The officers then rolled Plaintiff into prone position, placing their knees and

5    hands on Plaintiff's shoulders, neck, and back and forcing Plaintiff's hands behind his

6    back. (*Id*. ¶ 27.) Plaintiff was not resisting. (*Id*.) McPherson then placed Plaintiff in a

7    "figure four" position, crossing his ankles and folding his knees such that his feet were

8    against his lower back. (*Id*. ¶ 29.) The officers then proceeded to place Plaintiff in a

9    WRAP restraint. (*Id*.)

10        As a result of the altercation, Plaintiff suffered physical injuries such as a fracture

11   in his knee, severe knee pain and swelling, and cuts on his elbows and face as well as

12   emotional distress. (*Id*. ¶ 32.) Plaintiff is also no longer able to pursue his plans to

13   play professional basketball. (*Id*.) Plaintiff further contends that Defendant officers

14   failed to issue correct reports about the incident. (*See id*. ¶ 26.)

15        Plaintiff now brings suit under 42 U.S.C. § 1983 alleging a violation of the

16   Fourth Amendment by Defendant Officers McPherson, Kwan, Finkes, Kelly and

17   Huppert and a claim of *Monell* liability against Defendant City of Elk Grove.

18   Defendant City of Elk Grove brings the instant Motion to Dismiss the *Monell* cause of

19   action. Plaintiff filed an Opposition (Opp'n (ECF No. 21),) and Defendant issued a

20   Reply (Reply (ECF No. 22),). The Court took the matter under submission without oral

21   argument pursuant to Local Rule 230(g).

22                                **LEGAL STANDARD**

23        A party may move to dismiss for "failure to state a claim upon which relief can

24   be granted[.]" Fed. R. Civ. P. 12(b)(6). The motion may be granted only if "the

25   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

26   legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir.

27   2008). While the court assumes all factual allegations are true and construes "them in

28   the light most favorable to the nonmoving party," *Steinle v. City & Cnty. of S.F.,* 919

                                        3

1    F.3d 1154, 1160 (9th Cir. 2019), if the complaint's allegations do not "plausibly give

2    rise to an entitlement to relief" the motion must be granted. *Ashcroft v. Iqbal,* 556 U.S.

3    662, 679 (2009).

4        A complaint need contain only "a short and plain statement of the claim

5    showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), not "detailed

6    factual allegations." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  However,

7    this rule demands more than unadorned accusations; "sufficient factual matter" must

8    make the claim at least plausible. *Iqbal,* 556 U.S. at 678.  In the same vein, conclusory

9    or formulaic recitations of elements do not alone suffice. *Id.* "A claim has facial

10   plausibility when the plaintiff pleads factual content that allows the court to draw the

11   reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

12   (citation omitted).

13       These same standards apply to claims against municipal governments under

14   Section 1983. *See A.E. ex rel. Hernandez v. Cnty. of Tulare,* 666 F.3d 631, 637 (9th Cir.

15   2012).  A plaintiff's allegations "may not simply recite the elements" of a claim under

16   *Monell*. *Id.* (quoting *Starr v. Baca*, 651 F.3d 1202, 1216 (9th Cir. 2011)).  Rather, the

17   complaint "must contain sufficient allegations of underlying facts to give fair notice" of

18   the claims and allow the municipal government "to defend itself effectively." *Id.*

19   (quoting *Starr*, 652 F.3d at 1216).  The plaintiff's allegations "must plausibly suggest an

20   entitlement to relief, such that it is not unfair to require the opposing party to be

21   subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr*,

22   652 F.3d at 1216).

23                                   **DISCUSSION**

24   **I.    *Monell* Liability**

25       In *Monell v. Department of Social Services,* the Supreme Court held that local

26   governments may be held liable under section 1983 for wrongs done by the local

27   government itself.  436 U.S. 658, 690 (1978).  A municipality or local government

28   entity is subject to *Monell* liability when that government, "under color of some official

4

1    policy, 'causes' an employee to violate another's constitutional rights." *Id.* at 692.  A

2    municipality, however, cannot be held liable solely for the purported constitutional

3    violations of its employees. *Id.* at 691 ("In other words, a municipality cannot be held

4    liable under [section] 1983 on a *respondeat superior* theory.").  The municipality itself

5    must have acted through an official policy or custom. *Id.* at 694–95.  The challenged

6    policy must amount to "deliberate indifference" of the plaintiff's constitutional right

7    and must be the "moving force" behind the constitutional violation. *Mabe v. San*

8    *Berardino Cnty. Dep't of Soc. Servs.,* 237 F.3d 1101, 1110–11 (9th Cir. 2001).

9            The Ninth Circuit has identified four theories for establishing municipal liability

10   under *Monell*: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to

11   train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton*

12   *by Horton v. City of Santa Maria,* 915 F.3d 592, 602–03 (9th Cir. 2019).  Here, Plaintiff

13   alleges three theories of *Monell* liability: an unconstitutional custom, policy or practice

14   of using excessive force; a failure to train; and ratification of conduct by an official

15   policymaker.  Defendant argues that Plaintiff's theories fail for a lack of factual

16   allegations showing similar incidents sufficient to support a policy or practice, or

17   insufficient training, or ratification of conduct by an ultimate policymaker.  The Court

18   will address each theory of *Monell* liability in turn.

19           **A.  Underlying Constitutional Violation**

20           Here, Plaintiff cites to his Fourth Amendment excessive force claim against the

21   individual officers as the underlying violation for his *Monell* claim against Defendant.

22   Force used by a law enforcement officer that is not reasonably necessary to bring

23   about an arrest is excessive and unconstitutional under the Fourth Amendment. *See*

24   *Graham v. Connor,* 490 U.S. 386, 394–98 (1989).  The question in a Fourth

25   Amendment excessive force case is "whether the officers' actions are objectively

26   reasonable in light of the facts and circumstances confronting them." *Id.* at 397

27   (internal quotations and citations omitted).

28   ////

1    Plaintiff alleges that officers "aggressively slammed [Plaintiff] onto the back of
2    his vehicle" (FAC ¶ 22,) "delivered two forceful baton strikes to [Plaintiff's] right leg,
3    fracturing his knee in three places" (*Id.* ¶ 25,) "roll[ed] [Plaintiff] into prone position,
4    placing their knees and hands on [Plaintiff's] neck, shoulders, and back, and forcing
5    [Plaintiff's] hands behind his back; despite [Plaintiff's] lack of resistance and inability to
6    move due to his injuries" (*Id.* ¶ 27), among other allegations.  Plaintiff alleges that he
7    was not resisting his arrest.  (*Id.* ¶ 38.)  Together, these allegations provide enough
8    factual support to reasonably infer at this stage that officers' use of force may have
9    been unreasonable under the circumstances.  Thus, Plaintiff's allegations state a claim
10   of excessive force under the Fourth Amendment.[2]

11   **B.  Unconstitutional Custom, Policy or Practice**

12   Where no explicit policy exists, a plaintiff may establish municipal liability for a
13   constitutional violation upon a showing that there is a permanent and well-settled
14   practice by the municipality that gave rise to the alleged constitutional violation.  *See*
15   *City of St. Louis v. Praprotnik,* 485 U.S. 112,127 (1988).  "An unconstitutional policy
16   need not be formal or written to create municipal liability under Section 1983;
17   however, it must be so permanent and well settled as to constitute a custom or usage
18   with the force of law." *Gordon v. Cnty. of Orange,* 6 F.4th 961, 974 (9th Cir. 2021)
19   (citation and internal quotations omitted).  Allegations of random acts, or single
20   instances of misconduct are not enough to establish a municipal custom.  *Id*.  Rather,
21   "it must be founded upon practices of sufficient duration, frequency and consistency
22   that the conduct has become a traditional method of carrying out policy." *Trevino v.*
23   *Gates,* 99 F.3d 911, 918 (9th Cir. 1996).  In making that determination, the Court
24   observes that the line between "adequate and inadequate evidence of repeated
25   constitutional violations does not involve a specific quantum or number of
26
27   ───────────────
     [2] Defendant does not challenge that the officers were working under the color of state law, nor do they
28   challenge Plaintiff's claim brought under the Fourth Amendment.

1    allegations." *Estate of Mendez v. City of Ceres,* 390 F. Supp. 3d 1189, 1209 (E.D. Cal.

2    2019).

3         Plaintiff alleges that some of the force tactics used by City of Elk Grove Officers

4    increased significantly for years prior to the Plaintiff's incident, but as those numbers

5    increased, the number of "sustained" citizen force complaints remained low.

6    Specifically, 83% of citizen complaints from 2019-2023 were deemed "not sustained"

7    while 17% were "sustained." A "sustained" complaint would have resulted in an

8    additional investigation, while an "non-sustained" claim suggests that the use of force

9    was within city policy. Thus, Plaintiff argues that an environment and/or culture

10   existed within Defendant's Police Department that encouraged, and emboldened

11   officers to act in escalatory and excessively forceful ways without fear of discipline.

12   Plaintiff also cites to several areas where Defendant allegedly maintained inadequate

13   policies: use of force, control techniques, restraint methods, WRAP Restraints,

14   personal weapons, communication, and documentation and reporting of force.

15   (Opp'n at 1.) Lastly, Plaintiff supports his argument by citing seven prior instances that

16   he alleges show an unconstitutional custom or practice of using excessive force.

17   Defendant challenges the similarity of the seven incidents.

18        Plaintiff cited to seven prior incidences and included the following, albeit

19   limited, descriptions for each one:

20        • *Barber v. City of Elk Grove, et al*., No. 2:24-cv-01913-TLN-AC (E.D. Cal.

21          filed July 12, 2024): EGPD officers used excessive force by repeatedly

22          punching plaintiff in the face after unlawfully detaining him on false

23          pretenses during a traffic stop;

24        • *Jane Doe v. City of Elk Grove, et al.,* No: 2:21-cv-02278-TLN-CKD (E.D.

25          Cal. filed Dec. 10, 2021): EGPD sergeant threatened, coerced and

26          sexually assaulted a female, Latinx, victim of a car-jacking;

27        • *Tucker v. City of Elk Grove, et al.,* No. 2:20-cv-01620-TLN-KJN (E.D. Cal.

28          filed Apr. 29, 2022): EGPD officers shot a Black plaintiff during a vehicle

1      stop premised on a racially-motivated 911 call, and afterwards fabricated

2      statements that Plaintiff was resisting and reaching for a gun.  This was

3      allegedly known by EGPD supervisors including the EGPD police chief as

4      evinced by the fact that they reviewed the investigative reports and

5      videos of the incident;

6  • *Hara et al v. Elk Grove et al.,* No. 2:18-cv-020691-MCE-KJN (E.D. Cal filed

7      Oct. 3, 2018): EGPD officers used excessive force to detain an Asian

8      victim of a motorcycle crash;

9  • *Landeros et al., v. Schafer et al.,* No. 2:17-cv-02598-WBS-CKD (E.D. Cal.

10     May 20, 2022): EGPD officers used deadly force to detain the female

11     victim of a vehicle crash while other officers including supervisors looked

12     but failed to intervene.;

13 • *Alston v. City of Elk Grove, et al.,* (E.D. Cal. filed Oct. 3, 2011) May 20,

14     2022): EGPD officer stopped a female plaintiff's vehicle without probable

15     cause, approached her in a hostile and aggressive manner, interrupted

16     her 911 call, pulled her out of her vehicle, and forcefully yanked her to

17     the ground by her hair causing her to hit the pavement.  Then, the EGPD

18     officer allegedly filed false charges against the plaintiff and authored a

19     false report of the incident corroborated by other EGPD officers and

20     supervisors;

21 • *Witkin v. County of Sacramento,* No 2:05-cv-01662-MCE-DAD, 2006 WL

22     624876, at *1 (E.D. Cal. Mar. 9, 2006): Where officers of the cities of Elk

23     Grove and Sacramento observed the plaintiff commit an undetermined

24     traffic offense, followed and stopped plaintiff, and shot plaintiff multiple

25     times in the back and buttocks.

26     Plaintiff alleges that these incidents, which span from 2004 to 2024, support

27 finding that a pattern of an unconstitutional policy or practice exists.  However,

28 isolated or sporadic events are not predicates for liability.  *Trevino,* 99 F.3d at 918.

1  Additionally, conduct that is "contemporaneous or subsequent" to the instant action is

2  not a basis for liability. *See Connick v. Thompson,* 563 U.S. 51, 63 n.7 (2011)

3  (considering conduct that is "contemporaneous or subsequent. . . cannot establish a

4  pattern of violations that would provide 'notice to the cit[y] and the opportunity to

5  conform to constitutional dictates. . . (citation omitted)."). Accordingly, the Court does

6  not consider the incident outlined in *Barber v. City of Elk Grove,* as the case was filed

7  after the events giving rise to Plaintiff's claim and the date of the incident is not

8  alleged in the Complaint. The Court also does not consider the incident in *Witkin v.*

9  *City of Sacramento,* which had a decision issued in 2006, and involves incidents that

10  took place in 2004 because the incident appears too isolated in time from the other

11  events. Thus, there are five incidents that occurred between 2011 and 2022, which

12  are not too isolated or sporadic such that they could support a claim that a pattern

13  exists. Turning to the factual similarity of the remaining five events, the incidents

14  provided do not include enough detail to plausibly show a pattern exists. Looking at

15  the five remaining incidents, two involved an allegation of "excessive force", two

16  involved uses of a deadly weapon and/or deadly force, and one involved an officer

17  sexually assaulting a victim. (*See* FAC ¶ 55.) While the Defendant suggests a standard

18  for similarity that is too onerous, even at a more general level, the incidents Plaintiff

19  cites do not show a similarity in the degree or type of force to the allegations in the

20  First Amended Complaint. Here, Plaintiff alleges that officers used excessive force

21  when he was pulled from his vehicle, arrested and subjected to excessive force

22  through the use of a baton, a WRAP Restraint, and positional asphyxia. Although

23  Plaintiff alleges that the incidents in question involved officers responding to a traffic

24  or vehicle stop, the use of excessive force exists only in two of the five incidents, and a

25  similar type of force is not alleged in the prior incidents. *Compare Raudelunas v. City*

26  *of Vallejo,* No. 2:21-cv-00394-KJM-JDP, 2022 WL 329200, at *8 (E.D. Cal. Feb. 3, 2022)

27  (granting dismissal of claims relying on twenty-one incidents of excessive force

28  because none involved the victim being tased and handcuffed, as the plaintiff had),

1   *with McCoy v. City of Vallejo,* No. 2:19-cv-001191-JAM-CKD, 2020 WL 374356, at *4

2   (E.D. Cal. Jan. 23, 2020) (finding that six prior incidents involving deadly officer

3   shootings were factually similar to plaintiff's case where victim was also shot to death

4   by an officers), *and Seever v. City of Modesto,* No. 1:21-cv-01373-JLT-EPG, 2022 WL

5   17418355, at *5 (E.D. Cal. Dec. 5, 2022) (finding that five prior incidences of a lethal

6   weapon discharged, an additional case where the victim died from non-lethal rounds,

7   and two cases involving the same defendant was sufficiently factually similar to the

8   victim who was shot to death by police).[3]

9       Thus, the Court cannot find that a pattern exists such that an unconstitutional

10  custom or policy can be discerned.

11      **C.  Failure to Train**

12      To state a failure to train theory under *Monell* that can survive a motion to

13  dismiss, "a plaintiff must include sufficient facts to support a reasonable inference (1)

14  of a constitutional violation; (2) of a municipal training policy that amounts to a

15  deliberate indifference to constitutional rights; and (3) that the constitutional injury

16  would not have resulted if the municipality properly trained their employees."

17  *Benavidez v. Cnty. of San Diego,* 993 F.3d 1134, 1153–54 (9th Cir. 2021) (citations

18  omitted).

19      Plaintiff alleges that Defendant is liable under *Monell* for an unconstitutional

20  policy of failing to train its officers in their use of excessive force.  Plaintiff does not cite

21  to specific policies but generally refers to areas where the Defendants were "untrained

22  or at least insufficiently trained."  (FAC ¶ 52.)  Plaintiff argues that if Defendant had

23  properly trained its officers on deployment of baton strikes, takedown maneuvers,

24  prone positioning and proper de-escalation tactics during traffic related stops then

25  Plaintiff would not have been injured.  (Opp'n at 6.)  Success on a failure to train theory

26

27  _____

[3] Along with factual similarity, courts may find that an unconstitutional policy or practice exists where
municipalities fail to take remedial action following the incidents.  However, since the Court did not find
that factual similarity exists amongst the provided incidences, the Court does not consider subsequent
remedial action.  *See Estate of Mendez v. City of Ceres,* 390 F. Supp. 3d 1189, 1208 (E.D. Cal. 2018).

28

1  predicated on previous constitutional violations ordinarily requires Plaintiff to

2  demonstrate "[a] pattern of similar constitutional violations by untrained employees."

3  *Puente v. City of Phoenix,* 123 F.4th 1035,1066 (9th Cir. 2024) (citing *Connick*, 563 U.S.

4  at 62).  Plaintiff invokes the same incidents to support his failure to train theory.  (FAC

5  ¶ 55.)  However, for the reasons the Court has already explained, the events are not

6  sufficiently similar to support the showing of a pattern such that a failure to train would

7  be supported.

8         Additionally, it is possible that a "single violation of federal rights, accompanied

9  by a showing that the municipality has failed to train its employees to handle recurring

10  situations presenting an obvious potential for such a violation, could trigger municipal

11  liability."  *Puente,* 123 F.4th at 1066 (citation omitted).  In *City of Canton v. Harris*, the

12  Supreme Court discussed that liability may attach for a single incident where there is

13  proof of failure to train officers regarding the use of deadly force.  489 U.S. 378, 390

14  n.10 (1989).  Here, Plaintiff does not allege that the events here would invoke the

15  "single incident" exception outline in *City of Canton*.  Thus, Plaintiff's allegations

16  surrounding a failure to train also fail to state a claim.

17      **D. Ratification**

18         Lastly, ratifying the decisions of a subordinate by an official with final decision-

19  making authority can be a policy for purposes of municipal liability under section

20  1983.  *See Praprotnik,* 485 U.S. at 127.  To show ratification, a plaintiff must

21  demonstrate that the "authorized policymakers approve a subordinate's decision and

22  the basis for it."  *Christie v. Iopa,* 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting

23  *Praprotnik,* 485 U.S. at 127).  Notably, "[a] single decision by a municipal policymaker

24  'may be sufficient to trigger Section 1983 liability under *Monell,* even though the

25  decision is not intended to govern future situations,' but the plaintiff must show that

26  the triggering decision was the product of a 'conscious, affirmative choice' to ratify the

27  conduct in question."  *Lassiter v. City of Bremerton,* 556 F.3d 1049, 1055 (9th Cir.

28  2009) (citations omitted).  "A mere failure to overrule a subordinate's actions, without

11

1  more, is insufficient to support a [section] 1983 claim." *Lytle v. Carl,* 382 F.3d 978,987

2  (9th Cir. 2004).  For example, something "more" may be additional evidence of a final

3  policymaker's agreement or acquiescence to the challenged conduct, such as

4  conducting an "obviously flawed investigation" or "extreme factual situations." *Perkins*

5  *v. City of Modesto,* No. 1:19-cv-00126-NONE-EPG, 2022 WL 297101, at *17 (E.D. Cal.

6  Feb. 1, 2022) (citation omitted).

7       Plaintiff contends that Chief Davis is vested with final policymaking authority for

8  the Defendant's City Police Department and that at the time of the injuries, he was the

9  final policymaking authority with the power to issue a final determination as to

10  whether the officers' actions were within policy and procedure.  (FAC ¶ 45.)[4]  In the

11  Opposition, Plaintiff points to allegations in the FAC that allege that Defendant

12  maintains policies requiring officers to obtain a supervising officer's approval prior to

13  deploying a WRAP restraint, and that details about its use have to be reported.

14  (Opp'n at 13 citing FAC ¶ 30, 52.)  Plaintiff alleges that a WRAP restraint was used on

15  him but that the defendant officers inaccurately reported the incident.  (*Id.* citing FAC

16  ¶¶ 2, 11–13, 29–30.)  Plaintiff also alleges, upon information and belief, that Chief

17  Davis failed to conduct a serious inquiry into the use of force against Plaintiff because

18  he did not find that any defendant officers' conduct fell outside of city policy and

19  failed to discipline the involved officers.  (FAC ¶ 46.)

20       Here, Plaintiff has not sufficiently alleged the something "more" needed to

21  allege a plausible theory of ratification.  Allegations of a flawed investigation may

22  support a theory of ratification.  *See, e.g., James v. County of San Bernardino,* No.

23  5:25-cv-00140-WLH-SHK, 2025 WL 1674463, at *6 (C.D. Cal. May 9, 2025) (explaining

24  that the official policy maker was aware of the constitutional violation and affirmatively

25  signed off on its conclusion that the deputies' use of force complied with City policy).

26

27  [4] Plaintiff also includes allegations of ratification about Defendant Kelly.  However, Defendant Kelly is
    not alleged to be vested with "final policymaking authority" such that his actions would sustain a finding
28  of ratification.

1    However, the current allegations do not sufficiently allege Chief Davis's "deliberate" or

2    "conscious" decisions in any incident other than an absence of discipline for the

3    officers' actions.  *See Quinto-Collins v. City of Antioch,* No. 3:21-cv-06094-VC, 2022

4    WL 18574, at *1 (N.D. Cal. Jan. 3, 2022) (finding a plausible ratification theory existed

5    where there were allegations that the official policy maker intentionally made

6    statements, he knew to be false to protect his officers).  Without more, the Court can

7    only conclude that there was an absence of action on the part of Chief Davis.

8         Further, to the extent Plaintiff argues that the low number of investigations into

9    prior citizen complaints during Chief Davis's tenure supports the notion that he ratified

10   the behavior here slightly confuses the issue.  A theory of ratification is focused on the

11   municipalities' conduct following the events that gave rise to the _currently_ alleged

12   constitutional violation.  *See Seever,* 2022 WL 17418355, at *6 (citing *Sheehan v. City*

13   *& Cnty. of San Francisco,* 743 F.3d 1211, 1231 (9th Cir. 2014) *rev'd on other grounds,*

14   575 U.S. 600 (2015)).  On the other hand, a municipality's failure to discipline a pattern

15   of prior constitutional violations bears on whether an established custom or practice

16   of constitutional violations exists.  *Id.*  Thus, the Court does not find that prior failure to

17   discipline supports a theory of ratification.

18   **II.    Leave to Amend**

19        Requests for leave to amend should be granted with "extreme

20   liberality."  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020)

21   (citations omitted).  When considering whether to grant leave to amend, a district

22   court should consider several factors including undue delay, the movant's bad faith or

23   dilatory motive, repeated failure to cure deficiencies by amendments previously

24   allowed undue prejudice to the opposing party, and futility.  *Id.* (citing *Foman v. Davis*,

25   371 U.S. 178, 182 (1962)).  Of the *Foman* factors, prejudice to the opposing party

26   carries the most weight.  *Id.* (citing *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048,

27   1052 (9th Cir. 2003)).  Absent prejudice, or a strong showing of any of the

28   remaining *Foman* factors, there exists a _presumption_ under Rule 15(a) in favor of

1    granting leave to amend. *Eminence Cap., LLC*, 316 F.3d at 1052 (emphasis in original)

2    (citing *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997)). However,

3    when the district court has already afforded a plaintiff an opportunity to amend the

4    complaint, it has "wide discretion in granting or refusing leave to amend after the first

5    amendment, and only upon gross abuse will [its] rulings be disturbed." *Rich v.

6    Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (citations omitted). "The district court's

7    discretion to deny leave to amend is particularly broad where plaintiff has previously

8    amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.

9    1990).

10    Here, the Court cannot conclude that Plaintiff's *Monell* claim "could not possibly

11    be cured by the allegation of other facts," *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

12    Cir. 2000) (en banc) (internal quotation marks and citations omitted), and will

13    accordingly grant leave to amend. However, Plaintiff is informed that should the

14    Court again dismiss the *Monell* claims from a Second Amended Complaint, further

15    leave to amend will not be granted absent a showing of good cause.

16    **CONCLUSION**

17    Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF

18    No. 19) is GRANTED and Plaintiff's second cause of action is DISMISSED. Plaintiff is

19    granted leave to amend and within 21 days of this Order shall give notice of his intent

20    to proceed on his remaining claims or file a Second Amended Complaint within that

21    time.

22

23    IT IS SO ORDERED.

24    Dated:   **September 8, 2025**

      *Daniel J. Calabretta*

25    Hon. Daniel J. Calabretta
      UNITED STATES DISTRICT JUDGE

26

27    DJC6 – Allen224cv01994.mtd_d4

28

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28